IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

FURNITURE AND ACCESSORY RETAIL GROUP, INC.,
FURNITURE GROUP OF SAN DIEGO, INC.,
EDWARD FISHAUF AND ROSA FISHAUF, AS
CO-TRUSTEES OF THE ERF FAMILY TRUST, AND
RICHARD HUFFMAN AND KAYLEEN HUFFMAN, AS
CO-TRUSTEES OF THE RK HUFFMAN TRUST                              PLAINTIFFS

V.                                                CAUSE NO.: 1:10CV213-SA-JAD

LANE FURNITURE INDUSTRIES, INC.                                   DEFENDANT

MEMORANDUM OPINION

Plaintiffs filed a complaint alleging breach of contract and breach of the covenant of good faith and fair dealing [1]. Defendant responded with a Motion to Dismiss [7]. After reviewing the pleadings, motion, responses, rules and authorities, the Court GRANTS the Motion to Dismiss [7].

*Factual and Procedural Background*

On March 16, 2004, Lane Furniture Industries, Inc., (Lane) and Economy Furniture Group of San Marcos, Inc., (Economy) entered into a contract regarding Economy's opening of several single-brand Lane Home Furnishings Stores in California. Economy agreed to eventually open four Lane Home Furnishings Stores within a territory defined as San Diego County, or within a thirty mile radius of the City of Temecula.

In October of 2007, Plaintiffs contend that Lane instituted a new distribution strategy that focused not on single-brand stores, such as Lane Home Furnishings Stores, but to mass-market retailing. This change, Plaintiffs assert, resulted in Lane providing lower quality and lower price point products which were wholly incompatible with the dedicated store environment. Lane furnishings began to be sold at mass retailers, such as Costco, within Economy's sales area in

February of 2008. According to Plaintiffs, Lane's fundamental change in marketing strategy meant that certain product lines were no longer manufactured or available to the single-brand Lane Home Furnishings Stores, and that to fill the voids in Economy's inventory, Lane substituted other name brand furniture, such as Broyhill.

Economy closed both Lane Home Furnishings Stores in March and May of 2009. In their Complaint, Plaintiffs allege that Lane breached their contract by (1) failing to supply a product mix compatible with the single-branded store model of distribution; (2) failing to support the single-brand stores; (3) marketing Lane products through other retailers in Economy's geographic area; (4) failing to supply Economy's stores with exclusively Lane products; and (5) supplying the stores with lower quality, lower price point products. Plaintiffs additionally assert that Lane breached the implied covenant of good faith and fair dealing. Defendant has moved to dismiss Plaintiffs' causes of action.

*Motion to Dismiss Standard*

Under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). That "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S. Ct. 1955 (citations and footnote omitted). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

The Supreme Court's recent examination of the issue in Iqbal provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

*Discussion and Analysis*

Lane contends that the conduct Plaintiffs allege as a breach of contract is either explicitly authorized by the contract or consistent with its terms.

Courts are obligated to enforce a contract that is executed by legally competent parties containing clear and unambiguous terms, and parties are bound by its provisions. Ivison v. Ivison, 762 So. 2d 329, 335 (Miss. 2000). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." Id. The Court "is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended." Id. at 336. The meaning of a contract is determined using an objective standard, rather than taking into consideration a subjective intent or a party's belief that may conflict therewith. Palmere v. Curtis, 789 So. 2d 126, 131 (Miss. Ct. App. 2001) (citation omitted).

The Mississippi Supreme Court has established a three-tiered process for contract interpretation:

> First, we look to the "four corners" of the agreement and review the actual language the parties used in their agreement. [Pursue Energy Corp. v. Perkins, 558 So. 2d 349,] 352 [(Miss. 1990)]. When the language of the contract is clear or unambiguous, we must effectuate the parties' intent. Id. However, if the language of the contract is not so clear, we will, if possible, "harmonize the provisions in accord with the parties' apparent intent." Id. Next, if the parties' intent remains uncertain, we may discretionarily employ canons of contract construction. Id. at 352-53 (citing numerous cases delineating various canons of contract construction employed in Mississippi). Finally, we may also consider parol or extrinsic evidence if necessary. Id. at 353.

West v. West, 891 So. 2d 203, 210-11 (Miss. 2004).

I.  Breach of Contract

*(a) Failing to supply a product mix compatible with single-branded store model*

Plaintiffs claim that Lane's failure to continue distributing products that were successful in its single-brand stores was a breach of a provision attached to the contract which reads as follows:

> The following is a list of service enhancements for our Lane Home Furnishings Program: . . . Assortment: Each placement on the floor is based on best sellers.

Plaintiffs contend based on this language that Lane was obligated to continue to produce and provide the "best selling" Lane-branded furniture.

As to the change in distribution policy, the contract clearly notes that "[p]rices, sales and distribution policies and terms and conditions of sale may be changed from time to time by Lane." The contract further elaborates, "Lane reserves the right to apply different sales policies to different trade areas, geographic markets and regions and to different product lines and to modify, at Lane's exclusive discretion, independently exercised, any existing policy or future sales policy." Additionally, "The pattern of distribution in each sales territory is determined and managed by

4

Lane." Moreover, under "Conditions of Purchase," the following language appears:

> Lane may change, add to, discontinue or limit the availability of any Products without notice or liability to Retailer.

Under the clear policy of the contract language, Lane reserved the right to discontinue or limit the availability of any product to its retailers. The contract clearly vests the decision of product distribution to the sole discretion of Lane. That attachment outlined the support mechanism and service enhancements put in place by Lane for the benefit of its retailers. In light of the "Condition of Purchase" language reserving the right in Lane to discontinue or limit the availability of products, the Court cannot find that Lane's failure to supply specific products was a breach of the contract.

*(b) Failing to Support the Single-Brand Stores*

Plaintiffs claim that by completely stopping the manufacture of goods which could be successfully sold in a single-branded store environment and making lower-quality inexpensive goods designed for the mass market, Lane failed to support the Lane Home Furnishings Stores.

In addition to the above-cited provisions, the Court notes that the "Warranties" provision of the contract with states: "Retailer acknowledges that Lane has made no factual representations, warranties or guarantees as to the LANE HOME FURNISHINGS® Store Location or the potential profitability of the Store."

Thus, Defendant expressly disclaimed that Lane would "support" or guarantee the financial viability of any of its Lane Home Furnishings Store. Plaintiffs' claim of failure to support is dismissed as implausible based on the plain language in the contract.

*(c) Marketing Lane Products through other Retailers within Plaintiffs' Geographic Area*

Plaintiffs allege that the agreement between Lane and Economy provided exclusive right for

Economy to market Lane products in San Diego County and within a thirty mile radius of the City of Temecula. A plain reading of the contract, however, indicates that Lane appointed Economy as the "exclusive LANE HOME FURNISHINGS® Store retailer" for San Diego County and a thirty mile radius of the City of Temecula.

Accordingly, Plaintiffs could not prevail on their breach of contract claim against Lane for marketing Lane products through other retailers within Plaintiffs' geographic area as the contract does not contemplate this prohibition. This claim is dismissed.

*(d) Failing to Supply Economy's Stores with Exclusively Lane Products*

Plaintiffs assert Lane breached the contract by filling in Economy's inventory voids with Broyhill, or other brand named furniture, instead of exclusively Lane products.

The contract states that "Lane will sell LANE® furniture products . . . to Retailer at Lane's list prices . . . ." The contract does not explicitly state that Lane may only provide Lane furniture products. Thus, Defendant asserts by supplying Economy with other brands of furniture, Lane went beyond the contract. Moreover, Plaintiffs do not allege that Lane ceased selling all Lane products. Therefore, it appears to the Court that the contractual provisions have been complied with, and no breach is plausible based on the contract language.

*(e) Supplying Stores with Lower Quality, Lower Priced Products*

Plaintiffs contend that Lane breached the Agreement by supplying Plaintiffs' stores with lower-quality and lower price-point products designed to be sold on the mass-market, rather than the higher-quality and higher price-point merchandise designed to be sold in single-branded stores.

As noted above, Lane had the exclusive and discretionary right to "change, add to, discontinue or limit the availability of any Products without notice or liability to Retailer" under the

6

contract.

Accordingly, even viewing the facts in the light most favorable to Plaintiffs, the Court holds that based on the clear language of the contract, recovery against the Defendant is implausible on its face as to Plaintiffs' breach of contract claim.

II.  Breach of Covenant of Good Faith and Fair Dealing

Under Mississippi law, every contract carries with it an implied covenant of good faith and fair dealing in their performance, which covenant holds that "neither party will do anything which injures the right of the other to receive the benefits of the agreement." Ferrara v. Walters, 919 So. 2d 876, 883 (Miss. 2005). The duty of good faith and fair dealing "arises from the existence of a contract between parties." American Bankers' Ins. Co. of Fla. v. Wells, 819 So. 2d 1196 (Miss. 2001) (citing Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992)).  The breach of good faith is "bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Cenac, 609 So. 2d at 1272. To establish "bad faith," the plaintiffs must prove more than mere negligence or bad judgment; rather, "bad faith" requires a showing of some conscious wrongdoing on the part of the defendant caused by "dishonest purpose or moral obliquity." Univ. So. Miss. v. Williams, 891 So. 2d 160, 170 (Miss. 2004) Thus, it is said that "[g]enerally, as a matter of law, when a party acts in accordance with the express terms of a contract, the implied covenants of good faith and fair dealing have not been violated." Wilson v. Ameriquest Mortg. Co., 2006 U.S. Dist. LEXIS 64595, *13, 2006 WL 2594522, *5 (S.D. Miss. Sept. 8, 2006) (citing Baldwin v. Laurel Ford Lincoln-Mercury, Inc., 32 F. Supp. 2d 894, 898 (S.D. Miss. 1998)).

As noted above, Plaintiffs have not met their burden of plausibility under Rule 12(b)(6) as to their breach of contract claim.  Therefore, Defendant has acted in accordance with the express

7

terms of the contract, and no violation of the covenant of good faith and fair dealing have been adequately alleged.

*Conclusion*

Defendant's Motion to Dismiss [7] is GRANTED. Under the clear language of the contract, no breach alleged by Plaintiffs is plausible. As Plaintiffs' breach of contract claims have failed to survive, the breach of the implied covenant of good faith and fair dealing must also fail.

SO ORDERED, this the 8th day of June, 2011.

    **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**